UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

CARLOS LUIS GONZALEZ
CARMONA,

        Petitioner,

    v.                                        Case No.:  2:25-cv-1128-SPC-DNF

GARRETT RIPA *et al.*.

        Respondents,

## **OPINION AND ORDER**

Before the Court are Carlos Luis Gonzalez Carmona's Petition for Writ of Habeas Corpus (Doc. 1), the federal government's response (Doc. 15), and Gonzalez Carmona's reply (Doc. 19).  For the below reasons, the Court grants the petition.  Gonzalez Carmona also filed an Emergency Motion for Temporary Restraining Order and/or Permanent Injunction (Doc. 18).  This order renders that motion moot.

**A. Background**

Gonzalez Carmona is a native and citizen of Cuba who entered the United States on October 3, 2021, to seek asylum.  The Department of Homeland Security ("DHS") detained Gonzalez Carmona and served him with a Notice to Appear ("NTA").  On October 13, 2021, DHS released Gonzalez Carmona on recognizance and under terms of supervision.  On February 7,

2022, Gonzalez Carmona applied for asylum and withholding of removal. He has complied with all terms of supervision, maintained steady employment since receiving work authorization in 2022, and has no criminal record.

On April 20, 2025, DHS issued Gonzalez Carmona a superseding NTA, with a hearing scheduled for November 4, 2025. When Gonzalez Carmona reported to immigration court for the hearing, DHS dismissed the removal proceedings and arrested him as he left the courtroom. Gonzalez Carmona later found out that DHS had designated him for expedited removal. DHS initially detained Gonzalez Carmona at Alligator Alcatraz, then transferred him to Glades County Detention Center. On December 3, 2025, DHS informed Gonzalez Carmona that Immigration and Customs Enforcement ("ICE") plans to remove him to Mexico.

Gonzalez Carmona claims his detention violates the Immigration and Nationality Act ("INA") and his Fourth and Fifth Amendment rights because he is not eligible for expedited removal, and because DHS re-detained him without notice or an opportunity to be heard. Gonzalez Carmona asks the Court to order his release and to void the expedited removal order. The respondents argue the Court lacks jurisdiction to consider Gonzalez Carmona's claims.

**B. Legal Framework for Expedited Removal**

The INA establishes two procedures for removing noncitizens from the country. The first process—sometimes called a section 240 proceeding—begins when DHS issues the noncitizen a NTA. It involves an evidentiary hearing before an immigration judge, providing the noncitizen with an opportunity to apply for asylum. Noncitizens seeking asylum are entitled to due process under the Fifth Amendment. DHS may release the noncitizen into the country on parole while the process plays out, but only if the noncitizen demonstrates "that the release would not pose a danger to property or persons, and that the alien is likely to appear for any future proceedings." 8 C.F.R. § 1236.1(c)(8).

Expedited removal is the second process. It allows immigration officers to remove noncitizens "without further hearing or review." 8 U.S.C. § 1225(b)(1)(A)(i). Because expedited removal affords substantially fewer protections to the noncitizen's rights, the INA limits its applicability in two ways. First, noncitizens may be eligible for expedited removal "only if they are inadmissible on the basis that they either lack proper entry documents or falsified or misrepresented their application for admission." *Coalition for Humane Immigrant Rights v. Noem*, --- F. Supp. ---, ---, 2025 WL 2192986, at *5 (D.D.C. 2025) (citing 8 U.S.C. §§ 1225(b)(1)(A)(i) and 1182(a)(6)(C), (a)(7)). "Among that set, only two categories of noncitizens are eligible for expedited removal: (1) noncitizens 'arriving in the United States,' and (2) noncitizens who

3

'ha[ve] not been admitted or paroled into the United States' and cannot affirmatively show that they have been 'physically present in the United States continuously for the 2-year period immediately prior to the date of the determination of inadmissibility." *Id.* (quoting 8 U.S.C. § 1225(b)(1)(A)(i)–(iii)).

On January 23, 2025, Acting DHS Secretary Benjamine Huffman issued a memorandum instructing immigration officials to consider the expedited removal of "any alien DHS is aware of who is amenable to expedited removal but to whom expedited removal has not been applied[.]" Benjamine C. Huffman, Acting DHS Secretary, *Guidance Regarding How to Exercise Enforcement Discretion* (Jan. 23, 2025). The next day, DHS published a notice expanding the application of expedited removal. Office of the Secretary, DHS, *Designating Aliens for Expedited Removal*, 90 Fed. Reg. 8139.

In its implementation of the new policy, "the Government began targeting for expedited removal people already in section 240 removal proceedings, many of whom are pursuing asylum and other collateral relief." *Make the Road New York v. Noem*, --- F. Supp. 3d ---, ---, 2025 WL 2494908, at *5 (D.D.C. 2025). The D.C. District Court described a common pattern:

> [W]ith DHS first moving orally (without any advance notice) to dismiss the individual's pending section 240 proceedings, then arresting the individual at the courthouse immediately upon the dismissal of their section 240 proceedings, and then, finally, placing the individual in expedited removal proceedings through which they can be deported far more quickly, and with far less process, than they would have been in section 240 proceedings.

4

*Id.*

### C. Jurisdiction

The respondents argue the INA divests the Court of jurisdiction over Gonzalez Carmona's petition. They point to three jurisdiction-stripping sections, but the Court only needs to discuss one. 8 U.S.C. §§ 1252(a)(2)(A) bars courts from hearing certain claims relating to expedited removal. It states:

> Notwithstanding any other provision of law (statutory or nonstatutory), including section 2241 of Title 28, or any other habeas corpus provision, and sections 1361 and 1651 of such title, no court shall have jurisdiction to review—(i)…any individual determination or to entertain any other cause or claim arising from or relating to the implementation or operation of an order of removal pursuant to section 1225(b)(1) of this title, (ii)…a decision by the Attorney General to invoke the provisions of such section, (iii) the application of such section to individual aliens, including the determination made under section 1225(b)(1)(B) of this title, or (iv)…procedures and policies adopted by the Attorney General to implement the provisions of section 1225(b)(1) of this title.

8 U.S.C. § 1252(a)(2)(A). The INA carves out an exception to this jurisdiction-stripping section for habeas actions "limited to the determinations of (A) whether the petitioner is an alien, (B) whether the petitioner was ordered removed under [section 1225(b)(1)], and (C) whether the petitioner…is an alien lawfully admitted for permanent residence, has been admitted as a refugee…, or has been granted asylum[.]" *Id.* at § 1252(e)(2).

5

The respondents argue section 1252(a)(2)(A) strips the Court of jurisdiction over Gonzalez Carmona's petition because it is a challenge to DHS's implementation, invocation, and application of section 1225(b)(1) to him. Gonzalez Carmona argues the Court has jurisdiction under the Suspension Clause of the Constitution.

The Suspension Clause states, "The Privilege of the Writ of Habeas Corpus shall not be suspended, unless when in Cases of Rebellion or Invasion the public Safety may require it." U.S. Const. Art. I ¶ 9, cl. 2. The clause reflects that "the Framers considered the writ a vital instrument for the protection of individual liberty[.]" *Boumediene v. Bush*, 553 U.S. 723, 743 (2008). It ensures "the Judiciary will have a time-tested device, the writ, to maintain the delicate balance of governance that is itself the surest safeguard of liberty" and "protects the rights of the detained by affirming the duty and authority of the Judiciary to call the jailer to account." *Id.* at 745 (internal quotation marks removed).

In *Boumediene v. Bush*, the Supreme Court identified three factors "relevant in determining the reach of the Suspension Clause: (1) the citizenship and status of the detainee and the adequacy of the process through which that status determination was made; (2) the nature of the sites where apprehension and then detention took place; and (3) the practical obstacles inherent in resolving the prisoner's entitlement to the writ." *Id.* at 766.

Gonzalez Carmona's status is undisputed. He is a noncitizen who DHS paroled into this country after an individualized consideration of his circumstances. DHS revoked Gonzalez Carmona's parole status and detained him with no meaningful process. Without habeas review, he would have no opportunity to challenge the legal basis of his detention. As to the second factor, Gonzalez Carmona was not apprehended at the border or a port of entry. He was apprehended at an immigration court in Miami, years after his parole into the country, where he had appeared to participate in his removal case and asylum application. And finally, there appear to be no practical obstacles to resolving Gonzalez Carmona's entitlement to a writ of habeas corpus. In fact, his claim is amenable to a prompt resolution based on the pleadings already filed with the Court. Thus, the Suspension Clause prevents section 1252(a)(2)(A) or any other section of the INA from stripping the Court of jurisdiction over Gonzalez Carmona's challenge to the legality of his detention.[1]

But the Suspension Clause does not give the Court jurisdiction over the expedited removal order. The clause "protects the writ as it existed in 1789,

---

[1] Other courts applying the *Boumediene* factors in actions challenging detention based on DHS's new practices for expedited removal designations have reached the same conclusion. *See Noori v. Larose*, 25-cv-3006-BAS-MMP, 2025 WL 3295386, at *2-3 (S.D. Cal. Nov. 26, 2025); *Noori v. Larose*, No. 25-cv-1824-GPC-MSB, 2025 WL 2800149, at *8-9 (S.D. Cal. Oct. 1, 2025); *Y-Z-L-H v. Bostock*, 792 F. Supp. 3d 1123, 1141-43 (D. Or. 2025). Neither party has identified—and the Court has not found—any opinion declining to apply the Suspension Clause to habeas actions with similar facts.

when the Constitution was adopted." *Dep't of Homeland Security v. Thuraissigiam*, 591 U.S. 103, 116 (2020) (internal quotation marks and citation omitted). The writ of habeas corpus was not then understood "to permit a petitioner to claim the right to enter or remain in a country or to obtain administrative review potentially leading to that result." *Id.* at 117. "The writ simply provided a means of contesting the lawfulness of restraint and securing release." *Id.* So while the Court has jurisdiction over Gonzalez Carmona's challenges to his detention, his claims do not give the Court authority to void the expedited removal order.

### D. Exhaustion of Administrative Remedies

The respondents next ask the Court to dismiss this action because Gonzalez Carmona has not exhausted available administrative remedies. They argue he could have appealed the decision to dismiss his removal proceeding to the Board of Immigration appeals. But Gonzalez Carmona's habeas petition does not challenge that decision. It challenges the legality of his current detention, which stems from the designation for expedited removal, revocation of parole, and courthouse arrest. The INA provides no administrative review of those decisions. *See* 8 U.S.C. § 1225(b)(1)(A)(i) ("the officer shall order the alien removed from the United States *without further hearing or review*" (emphasis added)).

**E. The Petitioner's Claims**

Gonzalez Carmona asserts the respondents are detaining him in violation of the INA, the Fourth Amendment, and the Fifth Amendment. Count 1 claims his detention violates the INA because he is not eligible for expedited removal. Count 2 claims the respondents violated his Fifth Amendment due process rights by revoking his parole without notice or an opportunity to be heard. And Count 3 claims his re-detention after parole is an unreasonable seizure—and thus a Fourth Amendment violation—because no changed or exigent circumstances exist to justify it.

The respondents argue that ICE's decision to place Gonzalez Carmona in expedited removal made detention not only lawful but also mandatory. They concede that Gonzalez Carmona has a liberty interest to be free of civil detention, and that he is entitled to notice and an opportunity to be heard. But they claim he received due process at the November 4, 2025 hearing. They also argue Gonzalez Carmona's detention flows from ICE's unreviewable decision to designate him for expedited removal, so there is nothing here for the Court to review.

The Court finds Gonzalez Carmona's due process claim dispositive. The Fifth Amendment guarantees that "[n]o person shall be…deprived of life, liberty, or property, without due process of law[.]" U.S. Const. amend. V. The clause "applies to all 'persons' within the United States, including aliens,

9

whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001). It is thus "well established that the Fifth Amendment entitles aliens to due process of law in deportation proceedings." *Reno v. Flores*, 507 U.S. 292, 306 (1993).

The Supreme Court has long recognized that "due process is flexible and calls for such procedural protections as the particular situation demands." *Morrissey v. Brewer*, 408 U.S. 471, 481 (1976). Courts looks to three factors when considering what process is due in a given situation: (1) "the private interest that will be affected by the official action;" (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards;" and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976).

All three factors weigh heavily in Gonzalez Carmona's favor. First, his interest in freedom from detention "lies at the heart of the liberty" the Due Process Clause protects. *Zadvydas*, 533 U.S. at 690. Second, the risk of erroneous deprivation of that interest is substantial here. When DHS detained Gonzalez Carmona in 2021, a DHS officer found him eligible for supervised release. Since then, Gonzalez Carmona has kept his criminal record clean, he

has complied with all terms of supervision, and he proved he is no flight risk by attending his removal hearing.

ICE issued the order of expedited removal on November 4, 2025, the day of his courthouse arrest, without any new or additional information suggesting Gonzalez Carmona is a threat to public safety or a flight risk. What is more, ICE clearly exceeded its statutory authority when it designated him for expedited removal after revoking his parole. *See* 8. U.S.C. § 1225(b)(1)(A)(iii)(II) (excluding aliens who have been paroled in the United States from the class eligible for expedited removal). The procedure ICE used did not give Gonzalez Carmona an opportunity to challenge the legal basis for his detention or its necessity.

The respondents argue he had an opportunity to challenge his expedited removal designation at the November 4, 2025 hearing. But the order from that hearing indicates the immigration judge considered only DHS's motion to dismiss. DHS did not arrest Gonzalez Carmona and inform him of the designation for expedited removal until after the hearing. Gonzalez Carmona did not have an opportunity to contest the subsequent expedited removal order, revocation of parole, and detention.[2]

---

[2] The respondents also argue Gonzalez Carmona can pursue his asylum claim while in expedited removal. That argument appears entirely disingenuous, given the affirmative steps DHS took to prevent him from presenting his asylum claim to an immigration judge. That said, the Court's review is limited to the legality of Gonzalez Carmona's detention, so the Court's ruling is not based on the asylum process.

What is more, the Court recognizes significant value in additional safeguards, like the ones DHS has attempted to circumvent by dismissing his removal proceeding. Those safeguards ensure immigration detention serves its statutory purposes and is used in accordance with the laws enacted by Congress.

Third, the government has not established any legitimate interest in Gonzalez Carmona's continued detention. Immigration detention has two statutory goals: to ensure the noncitizen's appearance at future immigration proceedings and to prevent danger to the community. *Zadvydas*, 533 U.S. at 690. Gonzalez Carmoa's detention serves neither purpose. The immigration official who considered his circumstances in 2021 determined that he should be paroled on recognizance, and he has since remained out of trouble, applied for asylum, and participated in his removal proceedings.

The Court finds that ICE violated Gonzalez Carmona's right to due process by revoking his parole, designating him for expedited removal, and detaining him without reasonable notice and a meaningful opportunity to be heard. *See Make the Road New York v. Noem*, --- F. Supp. 3d ---, ---, 2025 WL 2494908, at *17 (D.D.C. 2025) ("In short, the expedited removal process hardly affords individuals any opportunity, let alone a 'meaningful' one, to demonstrate that they have been present in the United States for two years."); *see also United States v. Smith*, 30 F.4th 1334, 1338 (11th Cir. 2022) ("the

12

complete denial of the opportunity to be heard on a material issue is a violation of due process which is never harmless error" (cleaned up)).

### F. Conclusion

For the reasons stated above, the Court finds Gonzalez Carmona's detention violates his right to due process under the Fifth Amendment.

Accordingly, it is hereby

**ORDERED**:

Carlos Luis Gonzalez Carmona's Petition for Writ of Habeas Corpus (Doc. 1) is **GRANTED in part**.

1. The respondents shall release Gonzalez Carmona from custody within 24 hours of this Order. The respondents shall facilitate Gonzalez Carmona's transportation from the detention facility by notifying his counsel when and where he can be collected.

2. All other requested relief is **DENIED**.

3. The Clerk is **DIRECTED** to terminate any pending motions and deadlines, enter judgment, and close the case.

**DONE AND ORDERED** in Fort Myers, Florida on December 17, 2025.

*Sheri Polster Chappell*
SHERI POLSTER CHAPPELL
UNITED STATES DISTRICT JUDGE

SA: FTMP-1